# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIZABETH SARAH BROWN, *et al.*, | : | CIVIL NO.: 1:23-CV-01886 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| ADAMS COUNTY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

## I. Introduction.

The plaintiffs are a married Mennonite couple: Elizabeth Sarah Brown ("Elizabeth") and Daniel Lynn Brown ("Daniel") (collectively, "the Browns"). The Browns claim to be the subjects of a conspiracy between defendants Courtney Stoner ("Stoner"), her employer: Adams County, through its subunit Office of Children and Youth Services ("Adams County" or "Adams CYS"), coworkers: Alex Hackey ("Hackey") and Melissa Tolbert ("Tolbert"), and supervisors: Nicole Mansafu ("Mansafu"), Sarah Finkey ("Finkey"), (collectively, "the County Defendants"),[1] and the Pennsylvania State Police ("PSP") and Pennsylvania State

---

[1] Stoner, Hackey, Tolbert, Mansafu, and Finkey, without Adams County, are collectively referred to as the "Individual County Defendants."

Troopers Tyler Krause ("Trooper Krause"), Jason Gueck (" Trooper Gueck"), Spencer Crouse ("Trooper Crouse"), and B. Meier[2] (" Trooper Meier") (collectively, "the Commonwealth Defendants")[3] to harass and unlawfully remove the Browns' children from their custody.  The object of this conspiracy was completed on November 16, 2021, when the Troopers forcibly entered the Browns' hotel room, assaulted the pregnant Elizabeth, and allowed Stoner and Hackey to remove the Browns' two young children without a warrant or legal process.

The Browns, with the assistance of counsel, are proceeding on a nine-count[4] second amended complaint bringing constitutional and Pennsylvania state law claims.  The Commonwealth Defendants and the County Defendants have each filed a partial motion to dismiss. *Docs. 41, 43.*  For the reasons set forth below, we will grant the Commonwealth Defendants' motion and grant in part and deny in part the County Defendants' motion.

---

[2] No first name for Trooper Meier is included in the second amended complaint. *See Doc. 37.*

[3] Trooper Krause, Trooper Gueck, Trooper Crouse, and Trooper Meier, without PSP, are collectively referred to as the "Troopers."

[4] Counts VII, VIII, and IX are pleaded in the alternative. *See Doc. 37* at 43-48.

## II.  Background and Procedural History.

The Browns began this action by filing a complaint on November 14, 2023, against Adams County, Stoner, PSP, Trooper Krause, Trooper Gueck, and several John and Jane Doe defendants. *Doc. 1.*  Count I alleged a Fourth Amendment excessive force claim against Trooper Krause, Trooper Gueck, and Doe defendants; Count II alleged municipal liability for failure to train regarding excessive force against PSP; Count III alleged a Fourteenth Amendment state-created danger claim against Stoner, Adams County, and Doe defendants; Count IV alleged a 42 U.S.C. § 1983 ("Section 1983") civil conspiracy claim against all defendants; Count V alleged negligent, reckless, willful and wanton hiring, training, supervision, and retention against Adams County and PSP; Count VI alleged grossly negligent, reckless, and willful and wanton conduct against all defendants; Count VII alleged, in the alternative, civil battery against Trooper Krause, Trooper Gueck, and Doe defendants; Count VIII alleged, in the alternative, civil assault against Troopers Krause, Gueck, and Doe defendants; and Count IX alleged, in the alternative, *respondeat superior* liability against Adams County and PSP. *Doc. 1.*

On January 18, 2024, the Browns filed a motion requesting leave to file interrogatories. *Doc. 12.*  Adams County and Stoner answered the complaint the same day. *Doc. 13.*  The parties appeared for the Case Management Conference,

3

and the Browns stated their intention to file an amended complaint upon receipt of certain information from the County and Commonwealth Defendants. We issued the Case Management Order on February 27, 2024. *Doc. 23*. The Browns filed a motion for leave to file an amended complaint. *Doc. 25*. On March 5, we granted the motion, and the Browns filed the amended complaint the same day. *Doc. 26-27*.

The amended complaint added Trooper Crouse and Trooper Meier in their official and individual capacities as defendants. *Doc. 27*. Count I alleged Fourth Amendment excessive force and Fourteenth Amendment due process violations against Stoner and the Troopers; Count II alleged a municipal liability claim for Fourth Amendment unlawful seizure and Fourteenth Amendment due process violations against Adams County; Count III alleged a Fourteenth Amendment state-created danger claim against Stoner, Adams County, and Doe defendants; Count IV alleged a Section 1983 civil conspiracy claim against the County Defendants and the Troopers; Count V alleged negligent, reckless, willful and wanton hiring, training, supervision, and retention against Adams County; Count VI alleged grossly negligent, reckless, and willful and wanton conduct against the County Defendants and the Commonwealth Defendants; Count VII alleged, in the alternative, civil battery against the Troopers; Count VIII alleged, in the

4

alternative, civil assault against the Troopers; and Count IX alleged, in the alternative, *respondeat superior* liability against Adams County and PSP.

The Commonwealth and County Defendants filed motions to dismiss the amended complaint on March 19, 2024. *Docs. 28-29*. We ordered the parties to meet and confer, and file a certificate of concurrence regarding whether any of the purported bases for the motions to dismiss were curable by an amendment to the pleadings. *Doc. 31*. The parties met and conferred, and filed the certification of concurrence on March 29, 2024, agreeing that the Browns would file a second amended complaint by April 4, 2024. *Doc.33*. We endorsed this certification on April 1, 2024, and the Browns timely filed their second amended complaint. *Doc. 34, 37*.

On April 18, 2024, the County Defendants and the Commonwealth Defendants separately filed partial motions to dismiss the second amended complaint, and the parties all consented to proceed before this court pursuant to 28 U.S.C. § 636(c). *Docs. 40, 41, 43, 50*. The County Defendants and Commonwealth Defendants filed briefs in support to these motions (*docs. 45-46*), the Browns filed separate briefs in opposition, (*docs. 52-53*), and the County Defendants filed a reply to the Browns' opposition brief. *Doc. 54*. The following allegations are taken from the Browns' second amended complaint.

Elizabeth was born to Rosalee Hess ("Hess") but raised in foster care homes within the Amish or Mennonite communities in Pennsylvania due to Hess' unfitness to be a mother. *Doc. 37* at ¶¶ 47-51.  Elizabeth alleges that she grew up in poverty, was involuntarily hospitalized on one occasion due to hyperactivity, and was thereafter forced to take psychiatric medications by her foster family upon release. *Id.* at ¶¶ 52, 54-56, 59.  Around age fifteen, she began working at a flea market where she met her future husband, Daniel. *Id.* at ¶¶ 63-65.  At age eighteen, she left her foster home and stopped taking psychiatric medications. *Id.* at ¶¶ 66-67.  She and Daniel both maintain their Mennonite faith, including its prohibition on vaccines and modern medicines. *Id.* ¶¶ 68-70.  Elizabeth has kept little to no contact with her biological mother, Hess, and the Browns allege that Hess harbors resentment for this. *Id.* at ¶¶ 75-76.

Around February of 2019, while Elizabeth was pregnant with their first child, the Browns moved from Pennsylvania to Florida. *Id.* at ¶¶ 80-81.  They returned to Pennsylvania in September of 2019, to visit Daniel's family, and on September 10, Elizabeth gave birth to their daughter, A.B., at Hershey Medical Center. *Id.* ¶¶ 82-84.  After A.B's birth, Stoner, who is alleged to work at both Hershey Medical Center and Adams CYS, filed a report that Elizabeth was not fit to be a parent. *Id.* at ¶¶ 86, 91.

Within an hour of giving birth to A.B., Elizabeth was interviewed by Adams CYS employees regarding her fitness to be a parent, purportedly due to her history in foster care and with psychiatric medications. *Id.* at ¶¶ 93-94, 105. Hess, who was not informed by the Browns of A.B's birth, arrived at the hospital to see A.B. *Id.* at ¶¶ 95-99. The Browns denied her access, causing Hess to "act out" and file reports with law enforcement regarding Elizabeth's parental fitness. *Id.* at ¶¶ 101-02.

Elizabeth was discharged around September 14, but the Browns were forced to leave A.B. at Hershey Medical Center due to Adams CYS and law enforcement investigations. *Id.* at ¶ 104. The Browns were able to retrieve A.B. from Hershey Medical Center on September 28, 2019, though they had to remain in Pennsylvania because of ongoing CYS investigations. *Id.* at ¶¶ 109-11. They temporarily resided with Daniel's parents in Adams County or Daniel's aunt in York County until March 15, 2020. *Id.* at ¶ 112. During this time York County Children and Youth Services performed a welfare check on A.B. and later sent a letter to the Browns "dismissing any interest in the case." *Id.* at ¶¶ 115-16. Adams CYS performed two welfare checks on A.B. before dismissing the case because the allegations that Elizabeth was unfit were unfounded, and the Browns returned to Florida. *Id.* at ¶¶ 113, 118-21.

The Browns visited Pennsylvania again in December 2020 while Elizabeth was four months pregnant with their second child. *Id.* at ¶¶ 122-23.  Immediately upon returning to Pennsylvania, the Browns were informed that a report of abuse or neglect was made to Adams CYS, though the case was closed after Christmas with no investigation. *Id.* at ¶¶ 124-25.  The Browns allege that Hess made the false report to Adams CYS. *Id.* at ¶ 126.

While returning to Florida on January 3, 2021, the Browns stayed at Elizabeth's former foster parents' home in Harrisonburg, Rockingham County, Virginia. *Id.* at ¶ 128.  A day later, a sheriff from Rockingham County came to the home and asked questions about A.B. *Id.* at ¶ 129.  He had no warrant or legal paperwork. *Id.* at ¶ 130.  Three hours later, the sheriff returned with more officers, again with no warrant or legal paperwork, and broke down the door to the home. *Id.* at ¶¶ 131-34.  Sheriff Christopher Brown took A.B. from Daniel. *Id.* at ¶ 135. The next morning, a sheriff returned with paperwork notifying the Browns of an upcoming court hearing before a Rockingham County judge with "multiple ties" to Adams County and Adams CYS. *Id.* at ¶¶ 136, 140.  The Browns were cited with "abuse and neglect," and the judge ordered A.B. into the custody of Elizabeth's non-biological former foster sister. *Id.* at ¶¶ 137, 142.  The Browns returned to Florida without A.B. *Id.* at ¶ 144.  Two weeks later, they received a letter from

Rockingham County CYS that the case was unfounded, but A.B. was ordered to remain with Elizabeth's former foster sister and parents. *Id.* at ¶¶ 145-46.

In June 2021, the Browns travelled to Pennsylvania to be near Daniel's parents for the birth of their second child. *Id.* at ¶ 147.  On July 4, 2021, Elizabeth gave birth to the couple's second child, J.B., at the home of Daniel's parents and with the assistance of a professional midwife. *Id.* at ¶¶ 149-50.  The Browns then temporarily located to the Blue Skies Hotel in Gettysburg, Pennsylvania while Elizabeth recovered. *Id.* at ¶ 151.  In September 2021, the Browns received a letter from Rockingham County CYS closing its case concerning A.B., and on September 22, the Browns drove to Harrisonburg, Virginia and retrieved A.B. *Id.* at ¶¶ 152, 154.  As soon as the Browns returned to Gettysburg, they heard from family friends that Rockingham County CYS was attempting to reopen the case against the Browns despite no evidence of abuse or neglect. *Id.* at ¶ 155.

On November 16, 2021, the Browns were still residing at the Blue Skies Hotel, and Elizabeth was now pregnant with their third child. *Id.* at ¶¶ 156-57. Around 5:00 p.m., Daniel was away, and Elizabeth was in the hotel room with the two children and a helper, Bonnie Cathcart. *Id.* at ¶ 158.  There was a knock at the door, and Cathcart opened it. *Id.* at ¶¶ 159-60.  It was either Trooper Krause or Trooper Crouse, and he demanded entry into the room, though he did not have a warrant or any legal paperwork. *Id.* at ¶¶ 161-163.  Elizabeth denied him entry. *Id.*

at ¶ 164.  Around two hours later, the Troopers came to the Browns' door, along with Stoner and Hackey. *Id.* at 165, 167.  The Troopers broke down the door and beat Elizabeth while Stoner and Hackey removed A.B. and J.B. *Id.* at ¶¶ 166, 171, 174, 178-181.  Elizabeth alleges that officers broke her wrist, leaving the bone exposed, and that she was dragged out of the hotel room unconscious. *Id.* at ¶¶ 183-85.

The beating was witnessed by multiple individuals, one of whom called Daniel back to the hotel. *Id.* at ¶¶ 187-88.  When he arrived, the Troopers threatened him with violence. *Id.* at ¶ 189.  Daniel found Elizabeth unconscious on the ground and the children gone. *Id.* at ¶ 190.  He took her to Wellspan Chambersburg Hospital, where the Browns learned that the beating caused Elizabeth to miscarry their child. *Id.* at ¶¶ 194-95.  Mansafu, Finkey, and Tolbert were involved in the decision-making process leading up to the November 16 incident. *Id.* at ¶ 196.  Tolbert was "heavily involved in communicating with the court system" on the day of the incident. *Id.* at ¶ 198.

The Browns allege various connections between the different defendants and nonparties related to this case.  At the center is Stoner, who allegedly works at both Hershey Medical Center and Adams CYS. *Id.* at ¶¶ 210-11.  The day A.B. was born, there were approximately eight other babies born, seven of whom were also removed from their parents, in an apparent connection with Stoner. *Id.* at 212-13.

10

Stoner is allegedly a first cousin with the judge in Rockingham County, Virginia, who ordered A.B.'s removal to Elizabeth's former foster family. *Id.* at ¶ 214. This judge is in turn a cousin with a judge in Adams County. *Id.* at ¶ 215. Stoner is friends with or acquaintances of both Hess and Trooper Krause. *Id.* at ¶¶ 216-217.

The Browns' second amended complaint contains nine counts:[5] Count I, brought by Elizabeth only,[6] alleges Fourth Amendment excessive force and Fourteenth Amendment due process violations against the Individual County Defendants and the Troopers; Count II alleges municipal liability against Adams County for failure to train, supervise, and discipline its employees in relation to Fourth Amendment unlawful seizure and Fourteenth Amendment due process violations; Count III alleges a Fourteenth Amendment state-created danger claim against the County Defendants; Count IV alleges a Section 1983 civil conspiracy against the County Defendants and the Troopers; Count V alleges negligent hiring, training, supervision, and retention against Adams County; Count VI alleges grossly negligent, reckless, and/or willful and wanton conduct against the County Defendants and the Commonwealth Defendants; Count VII, brought by Elizabeth

---

[5] The individual defendants are sued in both their individual and official capacities as employees of either Adams County or the Commonwealth of Pennsylvania. *Doc. 37.*

[6] Unless otherwise noted, the claims are asserted by both Elizabeth and Daniel.

only, alleges, in the alternative, civil battery against the Troopers; Count VIII brought by Elizabeth only, alleges, in the alternative, civil assault against the Troopers; and Count IX alleges, in the alternative, *respondeat superior* liability against Adams County and PSP. *Doc. 37.* For relief in each count, the Browns demand judgment against the defendants "jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount(s) plus interest, costs, attorneys' fees, and punitive damages, and such other and further relief as the nature of this case requires." *Id.*

## III. Pleading and Motion-to-Dismiss Standards.

### A. Rule 12(b)(1) Standards.

Rule 12(b)(1) permits the dismissal of an action for lack of subject-matter jurisdiction. Challenges to subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) may be "facial" or "factual." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016). "[A] factual challenge allows 'a court [to] weigh and consider evidence outside the pleadings.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). A facial attack contests the sufficiency of the pleadings. *Id.* When there is a facial attack, as the Commonwealth Defendants appear to bring here, "we apply the same standard as on review of a motion to dismiss under Rule 12(b)(6)."

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d

Cir. 2017). The plaintiff has the burden of persuading the court it has jurisdiction.

*See Davis*, 824 F.3d at 346.


###### B. Rule 12(b)(6) Standards.

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a

complaint for "failure to state a claim upon which relief can be granted."  When

reviewing a motion to dismiss under Rule 12(b)(6), "[w]e must accept all factual

allegations in the complaint as true, construe the complaint in the light favorable to

the plaintiff, and ultimately determine whether [the] plaintiff may be entitled to

relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605

F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider [ ] the

complaint, exhibits attached to the complaint, matters of public record, as well as

undisputedly authentic documents if the [plaintiff's] claims are based upon these

documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the

pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch.*

*Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012).  "Under Federal Rule of Civil

Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the

claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The statement required by

Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's

claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S.

89, 93 (2007).  Detailed factual allegations are not required, but more is required

than "labels," "conclusions," or "a formulaic recitation of the elements of a cause

of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other

words, a complaint must do more than allege the plaintiff's entitlement to relief."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has

to 'show' such an entitlement with its facts." *Id.*

     In considering whether a complaint fails to state a claim upon which relief

can be granted, the court "'must accept all facts alleged in the complaint as true

and construe the complaint in the light most favorable to the nonmoving party.'"

*Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v.

Cty. Of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)).  But a court "need not credit a

complaint's bald assertions or legal conclusions when deciding a motion to

dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  A

court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff

has not alleged." *Associated Gen. Contractors of Cal. v. California State Council

of Carpenters*, 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

## IV. Discussion.

### A. Commonwealth Defendants.

The Commonwealth Defendants move for partial dismissal of the Browns' second amended complaint. *Doc. 45*. First, they argue PSP and the Troopers in their official capacity enjoy sovereign immunity pursuant to the Eleventh Amendment in suits brought under Section 1983 and state law, and that neither PSP nor the Troopers in their official capacities are "persons" within the meaning of Section 1983. Relatedly, they argue that the state law tort claims must be

15

dismissed against the Troopers in their individual capacities because they are entitled to statutory immunity under 42 Pa. C.S. § 8522(b).  Third, they argue that the Browns do not plausibly plead the Troopers' agreement or participation in a civil conspiracy.  Lastly, the Commonwealth Defendants argue that the Browns' "gross negligence" claim is not a cause of action under Pennsylvania law.

### 1.  Eleventh Amendment Sovereign Immunity.

The Commonwealth Defendants make two arguments concerning Eleventh Amendment sovereign immunity, and accordingly, our subject-matter jurisdiction over the relevant claims.  First, they argue that Counts VI and IX must be dismissed against PSP because it is a state agency for which the Eleventh Amendment bars suit.  Second, they argue that the Section 1983 claims in Counts I and IV and the state law tort claims in Counts VI, VII, and VIII against the Troopers in their official capacities are barred by the Eleventh Amendment.  In response, the Browns argue that the plain language of the Eleventh Amendment does not bar suits in federal court against a state by a citizen of the same state.  Even in the face of precedent to the contrary, the Browns argue that they have a good faith basis for a change in the law.

The Eleventh Amendment implicates the court's subject-matter jurisdiction. *See Durham v. Kelley*, 82 F.4th 217, 227 (3d Cir. 2023) (stating that the Eleventh

16

Amendment "imposes a jurisdictional bar against individuals bringing suit against a state or its agencies in federal court, or against a state official in his or her official capacity"); *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013) ("Therefore, unless Congress has 'specifically abrogated' the states' sovereign immunity or a state has unequivocally consented to suit in federal court, we lack jurisdiction to grant relief in such cases."); *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693, n.2 (3d Cir. 1996) (noting that "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction"); *but see Lombardo v. Pennsylvania, Dep't of Pub. Welfare*, 540 F.3d 190, 197 (3d Cir. 2008) (noting that "the Supreme Court's jurisprudence has not been entirely consistent in the view that the Eleventh Amendment restricts subject matter jurisdiction").

"Our federalist system of government accords respect for the sovereignty of the States in a variety of ways, including the Eleventh Amendment to the United States Constitution, which immunizes States from suits brought in federal court by both their own citizens and citizens of other States." *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 81 (3d Cir. 2016). The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

17

U.S. Const. Amend. XI.  Although its text appears to restrict only the Article III diversity jurisdiction of the federal courts, the Eleventh Amendment has been interpreted "'to stand not so much for what it says, but for the presupposition . . . which it confirms.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991)).  That presupposition is that each state is a sovereign entity in our federal system and it is inherent in the nature of sovereignty that a sovereign is not amenable to suit unless it consents. *Id.*

"Immunity from suit in federal court under the Eleventh Amendment is designed to preserve the delicate and 'proper balance between the supremacy of federal law and the separate sovereignty of the States.'" *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018) (quoting *Alden v. Maine*, 527 U.S. 706, 757 (1999)). It "serves two fundamental imperatives: safeguarding the dignity of the states and ensuring their financial solvency." *Id.*  It serves those interests by barring suits against the nonconsenting states. *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 73 (2000) (stating that "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States"); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").

There are two circumstances when the Eleventh Amendment does not bar a suit against a state or state agency. First, a state may waive its Eleventh Amendment immunity by consenting to suit. *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002). Second, Congress may abrogate a state's Eleventh Amendment immunity when it unequivocally intends to do so and when it acts pursuant to a valid grant of constitutional authority. *Geness v. Admin. Off. of Pennsylvania Cts.*, 974 F.3d 263, 269-70 (3d Cir. 2020). Neither of those circumstances are present here. The Commonwealth has not consented to suit in federal court. *See* 42 Pa. C.S. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("Pennsylvania has not waived its sovereign immunity defense in federal court."). Moreover, Section 1983, under which the Browns bring their constitutional claims, does not abrogate a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). Further, "[t]he Eleventh Amendment's protection . . . is not limited to the States alone, but rather extends to entities that function as 'arms of the State.'" *Maliandi*, 845 F.3d at 81. "The Pennsylvania State Police is an arm of the Commonwealth of Pennsylvania." *Frein v.*

*Pennsylvania State Police*, 47 F.4th 247, 257 (3d Cir. 2022).  As an arm of the state, the Pennsylvania State Police is entitled to Eleventh Amendment immunity.

Claims for damages against a state official in his or her official capacity are barred by the Eleventh Amendment.  Official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  In an official-capacity suit, the entity of which the officer is an agent is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As such, claims against state officials in their official capacities for damages are treated as suits against the state and are barred by the Eleventh Amendment. *Christ the King Manor*, 730 F.3d at 318.

Thus, the Browns' claims against PSP in Counts VI and IX, the official capacity claims against the Troopers brought pursuant to Section 1983 in Counts I and IV, and the state law claims against them in their official capacities in Counts VI, VII, and VIII of the second amended complaint will be dismissed because we are without subject-matter jurisdiction.

### 2.  Statutory Sovereign Immunity.

The Commonwealth Defendants argue that the Troopers in their individual capacities enjoy statutory sovereign immunity from the Pennsylvania state law claims against them because they were acting within the scope of their

employment and their actions do not fall within one of the ten enumerated

exceptions to sovereign immunity within 42 Pa. C.S. § 8522.  In response, the

Browns argue that the actions by the Troopers could be determined by a jury to

fall outside of the Troopers' scope of employment, and thus outside of the

statutory immunity protection.

As codified by the Pennsylvania General Assembly:

> Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure) or 62 (relating to procurement) unless otherwise specifically authorized by statute.

1 Pa. C.S. § 2310.

This statutory sovereign immunity applies to PSP employees. *See Justice v.*

*Lombardo*, 208 A.3d 1057, 1059 (Pa. 2019) (noting that, as an employee of a

Commonwealth agency, statutory sovereign immunity in 1 Pa. C.S. § 2310 applies

to a Pennsylvania State Police trooper).  Specifically, such immunity applies to

PSP employees so long as they are acting within the scope of their employment,

and even where a Commonwealth employee commits an intentional tort. *See Schell*

*v. Guth*, 88 A.3d 1053, 1067 (Pa. Cmwlth. 2014).  Pennsylvania enumerates ten

exceptions to its statutory sovereign immunity, each having the requirement that the damages arise "out of a negligent act." 42 Pa. C.S. § 8522(a).[7]

The proper test to determine if a Commonwealth employee is protected from liability pursuant to the sovereign-immunity defense under Section 2310 is to consider (1) "the Commonwealth employee was acting within the scope of his or her employment"; (2) "the alleged act which causes injury was negligent and damages would be recoverable but for the availability of the immunity defense"; and (3) "the act fits within one of the [10] exceptions to sovereign immunity." *See La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Commw. Ct. 1992).

Here, the second amended complaint explicitly alleges that the Troopers were acting in the scope of their employment while engaged in tortious conduct. *Doc. 37* at ¶¶ 30, 335. Further, none of the allegations concerning negligent conduct fall within one of the ten exceptions to statutory sovereign immunity, and Pennsylvania courts have consistently held that that the defense of sovereign immunity bars claims of intentional torts. *See La Frankie*, 618 A.2d at 1149; *see also Stone v. Felsman*, No. 10-0442, 2011 WL 5320738 at *11 (M.D. Pa. Nov. 1,

---

[7] The ten categories for which the Commonwealth has waived statutory sovereign immunity are damages arising out of (1) vehicle liability; (2) medical-professional liability; (3) the care, custody, and control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) the care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse. 42 Pa. C.S. § 8522(b)(1)-(10).

2011) (finding state law claims of assault, battery, false arrest, false imprisonment and malicious prosecution are barred by sovereign immunity). Thus, Counts VI, VII, and VIII against the Troopers in their individual capacities in the second amended complaint will be dismissed because they are statutorily immune from liability.

### 3. Civil Conspiracy.

The Commonwealth Defendants next argue that the Browns have failed to plausibly plead a Section 1983 civil conspiracy between the Troopers and the County Defendants. Specifically, they argue that the Browns' allegations lack specificity regarding the relationships between the co-conspirators, the goal of the conspiracy, or when the agreement was formed, instead relying on conjecture and conclusory allegations. In response, the Browns argue that they have sufficiently pleaded the elements of a Section 1983 civil conspiracy.

To state a civil conspiracy claim under Section 1983, the Browns must plausibly allege the elements of a state law civil conspiracy, *Ammiung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974), which, under Pennsylvania law, are "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal

23

damage." *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. 2008). In addition, the

conspirators must have acted under color of state law. *Jutrowski v. Township of*

*Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018). In order to "properly plead an

unconstitutional conspiracy, a plaintiff must assert facts from which a

conspiratorial agreement can be inferred." *Great Western Mining & Mineral Co. v.*

*Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (citing *D.R. v. Middle Bucks*

*Area Vocational Tech. Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992)). A complaint

pleading civil conspiracy must plead "enough factual matter (taken as true) to

suggest that an agreement was made,' in other words, 'plausible grounds to infer

an agreement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

Here, the Browns have not plausibly alleged a Section 1983 civil conspiracy,

instead relying on bald assertions and conclusory allegations. In support of the

conspiracy, the Browns allege that "Defendant Krause or Defendant Crouse is also

an acquaintance and/or friend of Elizabeth's mother" and that Trooper Krause or

Crouse became friends with Stoner through this relationship. *Doc. 37* at ¶¶ 275-76.

Then, with no further explanation, the Browns allege that the Troopers and the

Individual County Defendants "agreed to harass, file fraudulent allegations against,

viciously assault Plaintiff Elizabeth, and unlawfully remove the children from

Plaintiff's care." *Id.* at ¶ 277. The Browns' allegations of conspiracy are

essentially that two defendants are acquaintances, and that through this vague

24

relationship, ten of them agreed to participate in vast conspiracy to remove the Browns' children. A Section 1983 conspiracy cannot be based on conclusory assertions entirely lacking in specificity. Accordingly, the Section 1983 civil conspiracy claim in Count IV of the second amended complaint against the Troopers in their individual capacities will be dismissed.

### 4. Gross Negligence Claim.

Lastly, the Commonwealth Defendants argue that "gross negligence" alleged in Count VI is not a separate cause of action under Pennsylvania law and is instead merely a standard of care. They ask us to dismiss this claim. The Browns respond that the Commonwealth Defendants rely on an overly narrow reading of the relevant case law, arguing that Pennsylvania courts have held only that there are not separate causes of action for different levels of care, and that in any event, we should just treat Count VI as a negligence claim. Having already found, however, that the Troopers are immune from suit for this allegation, the Commonwealth Defendants' argument on this point is moot.

### B. County Defendants.

The County Defendants move for partial dismissal of the Browns' second amended complaint. *Doc. 43*. They argue that the Fourteenth Amendment due

process claim in Count I and municipal liability claim in Count II are barred by the applicable statute of limitations. They then argue that the Browns fail to state a claim against them under the state created danger doctrine in Count III. Next, they argue that the Browns fail to state a claim with respect to the Section 1983 civil conspiracy claim in Count IV. Finally, they argue that the state law tort claims in Counts V, VI, and IX are barred under Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S. § 8541 *et seq*. Count VI includes allegations of negligent, reckless, and willful misconduct against the County Defendants, and while they argue that they are immune under the PSTCA from liability for allegations of negligent and reckless conduct, the Individual County Defendants concede the statute does not bar suits for allegations of willful misconduct. Accordingly, such claim for willful misconduct will remain against the Individual County Defendants.

## 1. Statute of Limitations.

The County Defendants argue that Counts I and II should be dismissed because the statute of limitations on those claims has expired. They argue that while the original complaint was timely filed on November 14, 2023, two days before the statute of limitations expired, the two subsequent amendments added new claims and parties that do not "relate back" to this date and are thus untimely.

The original complaint named four defendants: Stoner, Adams County, Trooper Krause, and Trooper Gueck. *Doc. 1.* Count I of the original complaint asserted an excessive force claim against Troopers Krause and Gueck, and "Doe(s) 1-5." *Doc. 1.* The amended complaint, filed March 5, 2024, again asserted excessive force in Count I, but added a Fourteenth Amendment due process claim, and added Stoner, Trooper Crouse, and Trooper Meier as defendants against whom those claims were asserted. *Doc. 27.* The second amended complaint, filed April 4, 2024, asserted the Fourth Amendment excessive force and Fourteenth Amendment due process claims against the same defendants as the amended complaint, but further added Hackey, Mansafu, Finkey, and Tolbert. *Doc. 37.*

Count II of the original complaint asserted a municipal liability claim pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) against PSP for failure to train its employees regarding the use of excessive force. *Doc. 1.* The amended complaint asserted a municipal liability claim for Fourth Amendment unlawful seizure and Fourteenth Amendment due process against Adams County. *Doc. 27.* Count II did not substantively change in the second amended complaint. *Doc. 37.* The County Defendants argue that both the nature of the claims and the party against whom Count II was brought were changed, and the allegations supporting the claims against Adams County are entirely different than those alleged against PSP.

27

In response, the Browns argue that the amendments to the complaint added the names of John/Jane Doe defendants after the receipt of initial disclosures and provided clarification as to which counts were asserted against which defendants. They further argue that Federal Rule of Civil Procedure 15(c) allows the amendments to relate back to the filing date of the original complaint because the newly added defendants were on notice of the lawsuit because all the County Defendants share the same attorney and that the Browns lacked knowledge of some of the County Defendants' identities until receiving discovery.

The statute of limitations for claims brought pursuant to Section 1983 is the same as for personal injury torts in the state where the cause of action arose. *O'Connor v. City of Newark*, 440 F.3d 125, 126 (3d Cir. 2006). Here, there is no dispute that Pennsylvania law applies, and that Pennsylvania statute mandates a two-year statute of limitations for personal injury claims. 42 Pa. C.S. § 5524(1)-(8). Further, there is no dispute that the cause of action accrued on November 16, 2021, when A.B. and J.B. were removed from the Browns' custody, or that the original complaint was timely within two years on November 14, 2023. Instead, the Browns and County Defendants disagree on whether the subsequent amendments on March 5, 2024, and April 4, 2024, which would otherwise be untimely, relate back to the filing date of the original complaint under Federal Rule of Civil Procedure 15.

Federal Rule of Civil Procedure 15 "embodies a liberal approach to pleading." *Arthur v. Maersk, Inc.* 434 F.3d 196, 202 (3d Cir. 2006). Rule 15(a) allows a party to amend a complaint upon leave of court and states that leave "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Rule 15(c) provides that an amendment, so long as it arises out of the same conduct alleged in the original complaint, will typically "relate back" to the original complaint for purposes of the statute of limitations. Fed. R. Civ. P. 15(c). Together, the provisions of Rule 15 "ensure that an inadvertent error in pleading will not preclude a party from securing relief on the merits of a claim." *Arthur*, 434 F.3d at 202.

The relation back requirements for asserting a new claim are less stringent than the requirements for adding a new party. For a new claim to relate back, the amendment must assert "a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). An amendment adding a new party relates back if (1) the amendment asserts a claim that arose out of the "conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading" and (2) within the time period for serving a summons and complaint provided by Federal Rule of Civil Procedure 4(m) (90 days), the party sought to be brought in by amendment (i) "received such notice of the action that it will not be

prejudiced in defending on the merits" and (ii) "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C); *Moore v. Walton*, 96 F.4th 616, 623 (3d Cir. 2024).

The notice requirement does not demand that a newly named defendant have received notice of the original complaint by service of process, instead, "notice may be deemed to have occurred when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means." *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 195 (3d Cir. 2001). Notice can be actual or constructive, and the Third Circuit recognizes two methods of constructive notice. *Id.* at 196-97. First, the "shared attorney" method requires a newly added defendant share an attorney with one of the defendants named in the original complaint. *Id.* at 196. Second, the "identity of interest" method requires that the parties be "so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Id.* at 197 (quoting 6A Charles A. Wright et al., Federal Practice & Procedure § 1499, at 146 (2d ed. 1990)).

With respect to mistake, the Third Circuit has held an amendment adding a new party will relate back if the new party "should have known it would have been

named in the complaint but for a mistake—whether the mistake is based on lack of

knowledge or mere misnomer." *Arthur*, 434 F.3d at 209.  A "'mistake' is no less a

'mistake' when it flows from lack of knowledge as opposed to inaccurate

description." *Id.* at 208 (citation omitted).  This allows an amendment adding a

new party where the plaintiff named "Doe" defendants due to lack of knowledge.

Here, Count I of the timely original complaint asserted an excessive force

claim against Trooper Krause and Trooper Gueck and Doe defendants.  The

allegations concerned only the injuries Elizabeth allegedly suffered on November

16, 2021, at the hands of law enforcement. *Doc. 1*.  The amended complaint, filed

March 5, 2024, added a new claim to Count I, and asserted it against Stoner, an

existing defendant. *Doc. 27*.  The new claim, a Fourteenth Amendment due process

claim, meets the relation back standard, as the original complaint is replete with

allegations concerning the unlawful removal of the Browns' children, and even if

not explicit, such claim was "attempted to be set out," Fed. R. Civ. P. 15(c)(1)(B),

in the original complaint. *Doc. 1*; *Doc. 27*.  It is further asserted against Stoner,

who was already a defendant in the action.  The second amended complaint brings

the same Fourteenth Amendment due process claim against Stoner.  Thus, because

the addition of the Fourteenth Amendment due process claim in Count I of the

amended complaint related back to the filing of the original complaint, it does so

too in the second amended complaint, and Count I will not be dismissed against Stoner.

Count I of the second amended complaint also added four new defendants: Hackey, Mansafu, Finkey, and Tolbert (*doc. 37*), thus "changing the part[ies] . . . against whom a claim is asserted . . . ." Fed. R. Civ. P. 15(c)(1)(C).  In order for this claim to be timely against these defendants, within 90 days[8] of the filing of the original complaint, or by February 12, 2024, they must have had notice and knew or should have known that the action would have been brought against them but for a mistake about the proper party's identity.

Here, as we are at the motion to dismiss stage, we cannot determine whether Hackey, Mansafu, Finkey, and Tolbert had notice of the action under the "shared attorney" method.  Although they have the same attorney as Adams County and Stoner, who have been defendants since the filing of the original complaint, it is not clear when they came to be represented by that attorney and we cannot rule out, at this stage, whether they were represented during the 90-day period and had notice of the action within the meaning of Federal Rule of Civil Procedure 15(c)(1)(C).  Thus, Count I of the second amended complaint will not be dismissed

---

[8] The Browns incorrectly refer the "120-day period" to serve a summons and complaint.  Federal Rule of Civil Procedure 4(m) was amended in 2015 to reduce the presumptive time for serving a defendant from 120 days to 90 days. Fed. R. Civ. P. 4(m) (as amended 2015).

at this time against Hackey, Mansafu, Finkey, and Tolbert based on the statute of limitations.

Count II of the original complaint asserted a municipal liability claim pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) against PSP for failure to train its employees regarding the use of excessive force. *Doc. 1*. The amended complaint asserted a municipal liability claim for Fourth Amendment unlawful seizure and Fourteenth Amendment due process against Adams County, an existing defendant. *Doc. 27*. The municipal liability claim remains the same, though the underlying constitutional claims, unlawful seizure and due process, are new. As with the Fourteenth Amendment due process claim against Stoner in Count I, such claims here arise out of the same transaction or occurrence alleged in the original complaint, as the underlying allegations clearly concern the unlawful removal of A.B. and J.B. without legal process. Thus, Count II of the second amended complaint will not be dismissed against Adams County.

### 2. State-Created Danger.

In Count III, the County Defendants argue that the Browns have failed to state a claim with respect to their claim of Fourteenth Amendment state-created danger. Specifically, the County Defendants argue that Adams County cannot be held liable under a *respondeat superior* theory of liability for this claim, that

Mansafu and Finkey were acting as supervisors and lacked personal involvement, that there are insufficient allegations against Hackey and Tolbert, that there are insufficient allegations of an "act" by Stoner, that some of the allegations are false, and that the allegations are inadequate to satisfy three of the four elements of the claim.

The state-created danger doctrine is a substantive due process claim rooted in the Fourteenth Amendment and has an "exacting burden of pleading and proof." *Lambert v. Casteel*, No. 1:22-CV-1220, 2024 WL 4635520 *8 (M.D. Pa. Jul. 16, 2024), *report and recommendation adopted*, 2024 WL 4635076 (M.D. Pa. Oct. 10, 2024).  At the outset, concerning substantive due process, the Supreme Court has held that the Due Process Clause of the Fourteenth Amendment "d[oes] not impose an affirmative obligation on the state to protect its citizens[.]" *Bright v. Westmoreland Cty.*, 443 F.3d 276, 280 (3d Cir. 2006).  The Court reasoned:

> The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text.

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).  Accordingly, *DeShaney* stands for the proposition that the Due Process Clause

34

imposes no affirmative duty to protect a citizen who is not in the state's custody. *Bright*, 443 F.3d at 281.

The Third Circuit has held, however, that *DeShaney* does not preclude the existence of constitutional violations where "state authority is affirmatively employed in a manner that injures a citizen or renders him 'more vulnerable to injury from another source than he or she would have been in the absence of state intervention.'" *Bright*, 443 F.3d at 281 (quoting *Schieber v. City of Philadelphia*, 320 F.3d 409, 416 (3d Cir. 2003)).  "The Third Circuit has accordingly recognized, but narrowly construed, the state-created danger doctrine as a carefully crafted and specifically defined exception to *DeShaney's* scope." *Vorobyev v. Wolfe*, 638 F. Supp. 3d 410, 424 (M.D. Pa. 2022).  The four "essential elements" of the claim are: (1) the harm ultimately realized must have been foreseeable and fairly direct; (2) a state actor must have acted with a degree of culpability that shocks the conscience; (3) there must have been a relationship between the state actor and the plaintiff such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions; and (4) a state actor must have affirmatively used his or her authority in a way that created a danger to the citizen or caused the citizen to be more vulnerable to danger than had the state not acted at all. *Bright*, 443 F.3d at 281.

Thus, a plaintiff bringing a state-created danger claim must first show that

the state actors were presented with a foreseeable future harm. *Lambert*, 2023 WL

4635520 at *11.  The future harm must be defined with a high degree of certainty.

*Id.*

> In order to satisfy the first element of the state-created danger theory, the plaintiffs bear the burden of showing "that the harm ultimately caused was a foreseeable and fairly direct result of the state's actions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir. 1997). This requirement obligates the plaintiffs to adduce evidence demonstrating "an awareness on the part of the state actors that rises to the level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips*, 515 F.3d at 238.

*Hamilton v. Spriggle*, 965 F. Supp. 2d 550, 580 (M.D. Pa. 2013).

Here, with respect to the Individual County Defendants, we need not go

beyond the first element of a state-created danger claim because the Browns have

not plausibly alleged either foreseeability or direct harm.  The Browns allege that

Mansafu, Finkey, and Tolbert were "all involved in the decision making behind the

scenes leading up to and throughout this incident," that "Mansafu and Finkey were

supervisors for the County," and that "Tolbert was heavily involved in

communicating with the court system on the day of the incident." *Doc. 37* at ¶¶

196-98.  Stoner is alleged to have requested the Troopers to accompany her and

Hackey to the hotel to remove A.B. and J.B., and Hackey is merely alleged to have

been present for the removal of the children.

36

None of these allegations show a sufficiently concrete and readily foreseeable risk to Elizabeth's safety, that is, that the Troopers would assault Elizabeth in the process of removing A.B. and J.B.  Specifically, the Browns have not sufficiently detailed that the Troopers' alleged attack on Elizabeth during the removal of A.B. and J.B. was likely to follow from the acts of  Mansafu, Finkey, and Tolbert being involved in decision making behind the scenes, Mansafu and Finkey being supervisors, Tolbert communicating with the court system, Stoner requesting assistance from the Troopers, or Hackey being present.  Relatedly, regarding Mansafu, Finkey, Tolbert, and Hackey, and the allegations against them, the Browns have not sufficiently pleaded that the alleged harm was a fairly direct result of their actions.

Lastly, the Browns bring this claim against Adams County, a municipal entity.  The County defendants correctly argue that a municipality may not be held liable under a theory of *respondeat superior. See Monell*, 436 U.S. at 690-91.  Adams County may still be liable under a theory of municipal liability, and the Third Circuit has held that a municipality may be "independently liable for a substantive due process violation even when none of its individual employees is liable." *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) (citing *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir.2003)).

As mentioned, a municipality, such as Adams County, cannot be held liable under 42 U.S.C. § 1983 for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691. Rather, "under § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original)). "[A] § 1983 claim against a municipality may proceed in two ways." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). One way for a plaintiff to present a claim against a municipality is to allege "that an unconstitutional policy or custom of the municipality led to his or her injuries." *Id*. Another way for a plaintiff to present a claim against a municipality is to allege that his injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Id*. (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).

To plead a claim against a municipality under the policy-or-custom strand of municipal liability, "a plaintiff must allege that 'a [local] government's policy or custom . . . inflict[ed] the injury' in question." *Estate of Roman*, 914 F.3d at 798 (quoting *Monell*, 436 U.S. at 694). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Id*. (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (internal

quotation marks omitted)).  '"Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

"To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).  "Although a policy or custom is necessary to plead a municipal claim, it is not sufficient to survive a motion to dismiss." *Estate of Roman*, 914 F.3d at 798.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id*.

Another way for a plaintiff to present a claim against a municipality is to allege that his or her injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Forrest*, 930 F.3d at 105 (quoting *Estate of Roman*, 914 F.3d at 798).  "The latter avenue arose in the failure-to-train context, but applies to other failures and inadequacies by municipalities, including those related to supervision and discipline of its . . . officers." *Id*.

A plaintiff asserting a municipal liability claim based on a failure or inadequacy of training, supervision, or discipline "need not allege an unconstitutional policy." *Estate of Roman*, 914 F.3d at 798.  Rather, he must show

that the municipality's failure to train, supervise, or discipline "its employees 'reflects a deliberate or conscious choice.'" *Id*. (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)).  In this regard, the plaintiff must show "a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Forrest*, 930 F.3d at 106.  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id*.  In addition to deliberate indifference, a plaintiff asserting a municipal liability claim based on a failure or inadequacy of training, supervision, or discipline must also allege causation. *Elliott v. Pennsylvania Interscholastic Athletic Assoc.*, No. 3:19-CV-01934, 2022 WL 987887, at *5 (M.D. Pa. Mar. 31, 2022).  "[T]he causation inquiry focuses on whether 'the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 226 (3d Cir. 2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)).

Here, the Browns have not adequately alleged a municipal liability claim with respect to their state-created danger claim under any theory.  Count III is devoid of nonconclusory allegations that Adams County has a formal policy that

its employees create or act in a way that creates danger or that any of the defendants are final policymakers for purposes of municipal liability. While the Browns refer to failure to train in Count II of the amended complaint, Count III does not reference this theory of liability and the Browns have only alleged in conclusory fashion that the Individual County Defendants "report a significantly high number of children for investigation." *Doc. 37* ¶ 261. This is simply not enough to establish a pattern of similar violations, that is, that employees of Adams CYS regularly request police assistance in removing children from parents' custody and that such requests result in assault.

Thus, Count III of the second amended complaint will be dismissed against the County Defendants.

### 3. Civil Conspiracy.

The County Defendants move to dismiss Count IV, the Section 1983 civil conspiracy claim, on the basis that the Browns have failed to state a claim for relief. Specifically, the County Defendants argue that there are no allegations pertaining to Adams County and that the Browns have only provided conclusory assertions and bald legal conclusions.

As set forth above in connection with the discussion of the Commonwealth Defendants' motion, to state a civil conspiracy claim under Section 1983, the

Browns must plausibly allege the elements of a state law civil conspiracy,
*Ammiung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974), which, under
Pennsylvania law, are "(1) a combination of two or more persons acting with a
common purpose to do an unlawful act or to do a lawful act by unlawful means or
for an unlawful purpose; (2) an overt act done in pursuance of the common
purpose; and (3) actual legal damage." *Phillips v. Selig*, 959 A.2d 420, 437 (Pa.
Super. 2008).  In addition, the conspirators must have acted under color of state
law. *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018).

Here, the Browns have not plausibly alleged a Section 1983 civil conspiracy
against the County Defendants.  Instead they rely on the same bald assertions and
conclusory allegations as against the Troopers.  In support of the conspiracy, the
Browns allege that "Defendant Krause or Defendant Crouse is also an
acquaintance and/or friend of Elizabeth's mother" and that Trooper Krause or
Crouse became friends with Stoner through this relationship. *Doc. 37* at ¶¶ 274-76.
With no further explanation, the Browns allege that the County Defendants and the
Troopers "agreed to harass, file fraudulent allegations against, viciously assault
Plaintiff Elizabeth, and unlawfully remove the children from Plaintiff's care." *Doc.
37* at ¶ 277.  The Browns allegations of conspiracy are essentially that two
defendants are acquaintances, and that through this vague relationship, the
Troopers and the County Defendants agreed to participate in a conspiracy to

remove the Browns' children. A Section 1983 conspiracy cannot be based on such conclusory assertions. Accordingly, the Section 1983 civil conspiracy claim in Count IV of the second amended complaint will be dismissed.

### 4. Pennsylvania Political Subdivision Tort Claims Act Immunity.

The Browns also allege violations of Pennsylvania tort law, bringing causes of action for negligent, reckless, and willful and wanton hiring, training, supervision, and retention against Adams County in Count V; claims of negligence, recklessness, and willful and wanton conduct against the Individual County Defendants in Count VI; and a claim of *respondeat superior* liability against Adams County in Count IX. Because the PTSCA bars suits sounding in negligence and recklessness under the alleged circumstances, such claims fail under Pennsylvania law.

Subject to certain specific exceptions, the PTSCA provides in relevant part that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S. § 8541. Under 42 Pa.C.S. § 8501, a "local agency" is "[a] government unit other than the Commonwealth government." 42 Pa.C.S. § 8501. A county is a local agency. *Simko g. County of Allegheny*, 869 A.2d 571, 573 (Pa. Cmwlth. 2005).

The Act permits negligence suits against local agencies and their agents in the following nine narrow categories: (1) vehicle liability, (2) care, custody, or control of personal property, (3) real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, (8) care, custody, or control of animals, and (9) sexual abuse. Pa. C.S.A. § 8542(a).  Here, none of these categories apply and Adams County is immune under the PSTCA for the allegations in Counts V and VI.

An employee of a local agency is liable for civil damages on account of injuries to persons or property caused by acts of the employee within the scope of his employment, only to the same extent as his employing local agency. 42 Pa. C.S.A. § 8545.  Accordingly, in order to maintain a negligence claim for damages against an officer or employee of a local agency covered by the Act, a plaintiff must demonstrate that a recognized exception to the Act's broad grant of immunity applies.

 Although an employee's willful misconduct may vitiate the immunity provided under the Act, 42 Pa. C.S. § 8550, acts of lesser culpability, such as negligence or recklessness as alleged in Count VI against the Individual County Defendants in the second amended complaint, will not cause the employee to forfeit immunity from a damages suit. *See, e.g.*, *Dull v. W. Manchester Twp. Police Dep't,* 2008 WL 717836, at *9 (M.D. Pa. 2008); *Boria v. Bowers*, No. Civ. A. 06-

4383, 2007 WL 2726338, at *6 (E.D. Pa. Sept. 17, 2007) ("Mere negligence or deliberate indifference is not sufficient to break through governmental immunity on the grounds of willful misconduct."); *Renk v. City of Pittsburgh*, 641 A.2d 289, 294 (Pa. 1994); *see also Bright v. Westmoreland County*, 443 F.3d 276 (3d Cir. 2006) (applying the PSTCA to law enforcement officials whose conduct could not be deemed to be "willful misconduct").

Here, the PSTCA plainly applies to the Browns' claims of negligence and recklessness against the Individual County Defendants, and none of the nine exceptions set forth in 42 Pa. C.S. § 8542 has any application to the allegedly negligent conduct in this case. Instead, the Browns allege that the Individual County Defendants conspired to remove their children without due process of law and caused Elizabeth to be assaulted by the Troopers in the process of the removal.

Thus, the state law tort claims in Counts V, VI, IX, will be dismissed against the County Defendants, with the exception of the claim for willful conduct against the Individual County Defendants in Count VI.

**V. Amendment.**

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). "Under

Rule 15(a), futility of amendment is a sufficient basis to deny leave to amend."

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir.

2010).  "Futility 'means that the complaint, as amended, would fail to state a claim

upon which relief could be granted.'" *Id.* (quoting *in re Merck & Co. Sec.,*

*Derivative, & ERISA Litig.*, 493 F.3d 393, 400 (3d Cir. 2007)).  Thus, in

determining whether an amendment would be futile, we apply the same standard as

we apply in determining whether a complaint fails to state a claim upon which

relief can be granted under Fed. R. Civ. P. 12(b)(6). *Id.*  "In other words, '[t]he

District Court determines futility by taking all pleaded allegations as true and

viewing them in a light most favorable to the plaintiff.'" *Id.* (quoting *Winer Family*

*Trust v. Queen*, 503 F.3d 319, 330–31 (3d Cir. 2007)).

Here, the Browns have amended the complaint twice before and, as

explained herein, amendment of many of their claims is futile. *See Docs. 27, 37.*

Specifically, under the Eleventh Amendment they cannot sustain any official

capacity claims against the Troopers in Counts I (excessive force), IV (Section

1983 conspiracy), VI (negligent, reckless, willful conduct), VII (civil battery), and

VIII (civil assault), or their claims against PSP in Counts VI (negligent hiring and

supervision) and IX (*respondeat superior*).  Also, the Browns' claims against the

County in Counts V (negligent hiring) and IX (*respondeat superior*) and their

claims against the Individual County Defendants in Count VI (negligence and

recklessness, but not willful misconduct) are barred by the Pennsylvania Political Subdivision Tort Claims Act.

Beyond the claims discussed above that are barred by immunities, we will otherwise give the Browns one last opportunity to amend their complaint.

## VI. Conclusion.

Based on the foregoing, we will grant the Commonwealth Defendants' partial motion (*doc. 41*) to dismiss and grant in part and deny in part the County Defendants' partial motion (*doc. 43*) to dismiss. An appropriate order follows.

_**S/Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge